# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

№ 08-CV-2705 (JFB) (WDW)

DAVID FARRIOR AND LESLEY HEAD,
INDIVIDUALLY AND ON BEHALF OF OTHERS SIMILARLY SITUATED,

Plaintiffs,

VERSUS

GEORGE WESTON BAKERIES DISTRIBUTION, INC. AND GEORGE WESTON BAKIERIES, INC.,

Defendants.

**MEMORANDUM AND ORDER**
January 15, 2009

JOSEPH F. BIANCO, District Judge:

On July 7, 2008, plaintiffs David Farrior and Lesley Head brought the instant action on behalf of themselves, and on behalf of individuals similarly situated, against defendants George Weston Bakeries Distribution Inc. and its parent corporation, George Weston Bakeries Inc., for alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). Specifically, plaintiffs allege that, as route distributors for the defendants, they have been improperly classified as "independent contractors" and not paid overtime for hours worked that were in excess of forty hours in a given week.

Defendants have moved to transfer the venue of this action to the United States District Court for the Eastern District of Pennsylvania (hereinafter, "Eastern District of Pennsylvania"), pursuant to 28 U.S.C. § 1404(a), arguing that the convenience of party and non-party witnesses and the interests of justice warrant such a transfer. For the reasons stated below, the Court transfers the instant case to the Eastern District of Pennsylvania under the authority of 28 U.S.C. § 1404(a).

I. BACKGROUND

A. Facts

The following facts are undisputed for purposes of the motion unless otherwise noted.

Plaintiffs David Farrior and Lesley Head are independent contractor distributors just outside Montgomery, Alabama, and each plaintiff operates a territory around

Montgomery, Alabama. (Complaint ("Compl.") ¶¶ 3-4, 14.) Defendant George Weston Bakeries Inc. ("GWBD") and its parent corporation, defendant George Weston Bakeries Inc. ("GWB"), currently maintain their principal places of business and headquarters in Horsham, Pennsylvania.[1]

Plaintiffs and other route distributors sign a series of documents and agreements, including the Distribution Agreement (the "Agreement") referenced in the Complaint, when they purchase their distribution rights. (Compl. ¶ 12; July 31, 2008 Taylor Declaration ("Taylor Decl.") ¶ 4.) According to Carl Taylor, who is a Vice President of GWBD and GWB, "[m]ost of these documents are formulated and drafted by GWBD personnel with input from its corporate headquarters" in the Eastern District of Pennsylvania. (Taylor Decl. ¶ 4.) Moreover, since at least 2004, the Agreements between GWBD and the route distributors have provided that they are governed by Pennsylvania law. (Taylor Decl. ¶ 5.) Under the Agreement, each plaintiff owns distribution rights to certain GWBD products within a territory known as a "Sales Area" within Alabama, and plaintiffs Farrior and Head have never had any rights to sell GWBD's products in the Eastern District of New York. (Taylor Decl. ¶ 3.)

According to defendants, they have maintained their corporate headquarters and principal place of business in Horsham, Pennsylvania since at least 2004. (Taylor Decl. ¶ 6.) Plaintiffs contend that, although defendants are currently headquartered in Horsham, their headquarters was previously located in Bay Shore, New York as recently as February 2006. Plaintiffs' assertion regarding the date is based upon the fact that plaintiff Farrior's contract states that GWBD's principal place of business is 55 Paradise Lane, Bay Shore, New York. (*See* Plaintiffs' Opposition Memorandum, at 1 and Ex. A.) Plaintiffs further assert, in a conclusory fashion in their brief, that they "understand and believe that the research, development and determination to utilize the independent distributor model at issue in this case took place in the state of New York and within this District, at Defendants' prior headquarters which was located in Bay Shore, New York." (Plaintiffs' Opposition Memorandum, at 1 n.1.) Defendants contend that the Bay Shore address on the contract was a mistake and simply an erroneous remnant from the predecessor agreements from before 2004, when the defendants were located in Bay Shore, New York. (*See* Taylor Decl. ¶ 6.) ("To the extent that any agreements executed by Messrs. Farrior and Head mistakenly state that GWBD maintains a 'principal office' at an address in New York, those statements are merely errors and remnants of predecessor agreements from before 2004.").

With respect to potential witnesses and documents that are relevant to the issues in the lawsuit, defendants note that "[s]ubstantial aspects of GWBD's independent contractor system and compensation policies and practices, including those relating to overtime, have been formulated by individuals at Defendants' corporate headquarters in Horsham, Pennsylvania." (Taylor Decl. ¶ 7.) In addition, according to defendants, the central location for the coordination of

---

[1] The Complaint erroneously identifies New York as the defendants' principal place of business. (Compl. ¶¶ 2, 5, 6.) However, plaintiffs concede that defendants currently maintain their headquarters in the Eastern District of Pennsylvania. *See* Plaintiffs' Opposition Memorandum, at 2 ("Defendants GWBD and GWB are currently headquartered in Horsham, Pennsylvania.").

company witnesses and document production for this lawsuit will be defendants' headquarters in Horsham, Pennsylvania. (Taylor Decl. ¶ 8.) Moreover, many of defendants' corporate officers work in Horsham, Pennsylvania, and none work in the Eastern District of New York. (Taylor Decl. ¶ 9.) Finally, the defendants' legal and human resources departments are also located at the defendants' corporate headquarters in Horsham, Pennsylvania. (Taylor Decl. ¶ 10.)

B. Procedural History

On July 7, 2008, plaintiff filed the instant lawsuit in this District. On July 30, 2008, defendants filed an answer. On August 4, 2008, defendants filed a motion to transfer this action to the Eastern District of Pennsylvania, pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1404(a). On August 25, 2008, plaintiffs filed their opposition to the motion. On August 29, 2008, defendants filed their reply. On November 14, 2008, the Court conducted a conference and invited both sides to supplement their papers regarding the relevant time frame of defendants' re-location of their offices from Bay Shore, New York, to Horsham, Pennsylvania. On December 3, 2008, defendants submitted an additional affidavit from Vice President Carl H. Taylor. On December 19, 2008, plaintiffs filed a supplemental brief in response to defendants' submission. On January 7, 2009, the Court conducted oral argument on the motion by telephone. The Court has fully considered all of the submissions and arguments of the parties.[2]

II. DISCUSSION

A. Applicable Law

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Section 1404(a) is intended "to prevent waste of 'time, energy and money' and 'to protect litigants, witnesses and [the] public against unnecessary inconvenience and expense.'" *Mastercard Int'l Inc. v. Lexcel Solutions, Inc.,* No. 03 Civ. 7157 (WHP), 2004 WL 1368299, at *5 (S.D.N.Y. June 16, 2004) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)). "District courts have broad discretion in making determinations of convenience under Section 1404(a) and notions of convenience and fairness are considered on a case-by-case basis." *D.H. Blair & Co., Inc. v. Gottdiener,* 462 F.3d 95, 106 (2d Cir. 2006); *accord Publicker Indus. Inc. v. States (In re Cuyahoga Equip. Corp.)*, 980 F.2d 110, 117 (2d Cir. 1992). In determining whether to transfer venue, courts examine: (1) whether the action could have been brought in the proposed forum; and (2) whether the transfer would "promote the convenience of parties and witnesses and would be in the interests of justice." *Clarendon Nat'l Ins. Co. v. Pascual*, No. 99 Civ. 10840 (JGK) (AJP), 2000 WL 270862, at *2 (S.D.N.Y. Mar. 13, 2000) (quoting *Coker v. Bank of America*, 984 F. Supp 757, 764 (S.D.N.Y. 1997)) (other

---

[2] Neither side requested an evidentiary hearing to resolve any purported factual dispute pertaining to the motion, nor does the Court believe such a hearing is required in this case given the other undisputed facts related to the motion. *See, e.g.,*

*Starnos v. Small*, 512 F.2d 918, 934 (D.C. Cir. 1974) (noting, in connection with transfer motion, that "[i]n some cases an evidentiary hearing may be necessary to develop relevant facts"). In any event, even if the purported factual disputes were resolved in plaintiffs' favor, transfer is still warranted for the reasons discussed *infra*.

citations omitted).

The parties do not dispute that this action could have been brought in the Eastern District of Pennsylvania. Instead, the parties focus on whether transfer would promote the interests of justice and the convenience of the parties. The Second Circuit has summarized some of the factors, among others, that a district court is to consider in the exercise of its discretion:

> (1) the plaintiff's choice of forum, (2) the convenience of the witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of the parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties.

*D.H. Blair & Co., Inc.,* 462 F.3d at 106-07 (quoting *Albert Fadem Trust v. Duke Energy Corp.*, 214 F. Supp. 2d 341, 343 (S.D.N.Y. 2002)). Some courts have identified additional factors, including (1) "the forum's familiarity with governing law," and (2) "trial efficiency and the interest of justice, based on the totality of the circumstances." *Glass v. S&M NuTec,* 456 F. Supp. 2d 498, 501 (S.D.N.Y. 2006); *accord In re Hanger Orthopedic Group, Inc. Sec. Litig.,* 418 F. Supp. 2d 164, 167-68 (E.D.N.Y. 2006); *see also Dealtime.com v. McNulty*, 123 F. Supp. 2d 750, 755 (S.D.N.Y. 2000) (collecting cases).

There is no strict formula for the application of these factors, and no single factor is determinative. *See, e.g., Hilti Aktiengesellschaft v. Milwaukee Elec. Tool Corp.*, No. 04 Civ. 629 (ARR) (ASC), 2004 WL 1812821, at *4 (E.D.N.Y. July 19, 2004); *Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.,* 419 F. Supp. 2d 395, 402 (S.D.N.Y. 2005). Instead, these factors should be applied and weighed in the context of the individualized circumstances of the particular case. The moving parties, GWBD and GWB, bear the burden of showing that transfer is warranted in light of these factors. *See O'Hopp v. ContiFinancial Corp.,* 88 F. Supp. 2d 31, 34 (E.D.N.Y. 2000) (citing *Factors Etc., Inc. v. Pro Arts, Inc.,* 579 F.2d 215, 218 (2d Cir. 1978)).

B. Analysis

(1) Plaintiff's Choice of Forum

It is well settled that the plaintiff's choice of forum is "given great weight." *D.H. Blair & Co., Inc.*, 462 F.3d at 107 (citation omitted). Thus, "[a] plaintiff's choice of venue is entitled to significant consideration and will not be disturbed unless other factors weigh strongly in favor of transfer." *Royal Ins. Co. of Am. v. United States,* 998 F. Supp. 351, 353 (S.D.N.Y. 1998) (citations omitted). However, courts have noted that the weight given to this factor is diminished where (1) the operative facts have "little or no connection" with the forum chosen by the plaintiff, *Stein v. Microelectronic Packaging, Inc.,* No. 98 Civ. 8952 (MBM), 1999 WL 540443, at *8 (S.D.N.Y. 1999), s*ee also Wagner v. N.Y. Marriott Marquis*, 502 F. Supp. 2d 312, 317 (N.D.N.Y. 2007) ("The presumption favoring plaintiff's choice of forum, however, is not so rigidly applied where, as here, the cause of action arose outside of that forum . . . .") (citation omitted); *Royal Ins. Co. of Am.,* 998 F. Supp. at 353 ("The weight accorded to a plaintiff's choice of venue is significantly diminished, however where the operative facts have no connection to the chosen district."); *Hernandez v. Graebel Van Lines, Inc.,* 761 F. Supp. 983, 990 (E.D.N.Y. 1991) ("[W]here the

4

transactions or facts giving rise to the action have no material relation or significant connection to the plaintiff's chosen forum, then the plaintiff's choice is not accorded the same 'great weight' and in fact is given reduced significance."); or (2) where plaintiff's residence is not the chosen forum, *see, e.g., De Jesus v. Nat'l R.R. Passenger Corp.*, 725 F. Supp. 207, 208 (S.D.N.Y. 1989) ("A plaintiff's choice of forum is entitled to substantial weight. But where a plaintiff chooses a forum that is not his residence, that weight is diminished."). Where the selected forum is not connected in a meaningful way to the operative facts *and* is not the plaintiff's residence, the deference to the chosen forum is significantly diminished. *See, e.g., Eskofot A/S v. E.I. Du Pont De Nemours & Co.*, 872 F. Supp. 81, 96 (S.D.N.Y. 1995) ("The deference accorded to plaintiff's choice of forum . . . is diminished substantially where the forum is neither plaintiff's home district nor the place where the events or transactions underlying the action occurred."); *Thomas Am. Corp. v. Fitzgerald,* No. 94 Civ. 0262 (CBM), 1994 WL 440935, at *5 (S.D.N.Y. Aug. 11, 1994) ("[T]he plaintiff's choice of forum is accorded less weight where the plaintiff's chosen forum is neither plaintiff's home nor the place where the operative facts of the action occurred."). Moreover, "[w]here it appears that the plaintiff was forum shopping and that the selected forum has little or no connection with the parties or the subject matter, plaintiff's choice of forum is entitled to no weight whatever, and the transfer of venue is appropriate." *Pierce v. Coughlin*, 806 F. Supp. 426, 429 (S.D.N.Y. 1992) (internal quotation marks and citation omitted). In addition, a "plaintiff's choice of forum is a less significant consideration in a (here, putative) class action than in an individual action."[3] *In re Warrick,* 70 F.3d

---

[3] Plaintiffs argue that this principle applies in a class action, but not a collective action under the FLSA. (Plaintiffs' Opposition Memorandum, at 7.) However, other courts have noted this consideration in the context of FLSA collective actions and this Court believes that the rationale underlying giving less weight to plaintiff's choice of forum in a class action applies to this FLSA collective action, especially where it is only a putative collective action where plaintiffs have not already opted-in to the lawsuit in this District. *See, e.g., Montgomery v. Tap Enterprises, Inc.*, No. 06 Civ. 5799 (HB), 2007 WL 576128, at *4 (S.D.N.Y. Feb. 26, 2007) ("Plaintiffs counter that because this lawsuit is a FLSA collective action, in which plaintiffs 'opt-in' – rather than a typical Rule 23 class action, in which plaintiffs 'opt-out' – that essentially, any plaintiffs who 'opt-in' to the litigation will have affirmatively done so, and thus their choice of forum is entitled to greater deference . . . . Plaintiff's argument would be stronger in a situation where plaintiffs had already 'opted-in' to the lawsuit, as opposed to here, where the litigation is nascent. In any case, whether plaintiffs 'opt-in' or 'opt-out' seems secondary to the ultimate convenience (or inconvenience) of the forum to the parties and witnesses involved.") (citations omitted); *accord Freeman v. Hoffmann-La Roche Inc.,* No. 06 Civ. 13497 (RMB)(RLE), 2007 WL 895282, at *3 (S.D.N.Y. March 21, 2007) (noting, in case that included a putative FLSA collective action, that "a plaintiff's choice of forum is afforded little weight in a purported class action, as here, where numerous potential plaintiffs [are] each possibly able to make a showing that a particular forum is best suited . . . .") (quotations and citations omitted); *Earley v. BJ's Wholesale Club, Inc.,* No. 06 Civ. 3529 (WHP), 2007 WL 1624757, at *2 (S.D.N.Y. June 4, 2007) (stating that, in a putative FLSA collective action, plaintiff's choice of forum applies "with considerably less force than it would under other circumstances."). In any event, even if the Court agreed with plaintiffs' contention on this issue and treated this collective action differently than a class action situation for purposes of a

736, 741 n.7 (2d Cir. 1995).

In the instant case, both named plaintiffs reside in Alabama. Moreover, as discussed *infra*, the operative facts in this lawsuit have no connection to the Eastern District of New York. In addition, plaintiffs' counsel seek to have this lawsuit certified as a collective action under the FLSA which, if granted, will result in plaintiffs being situated around the nation. Thus, although plaintiffs have chosen this district as their forum, an analysis of the other factors (as detailed below) demonstrates that the balance is overwhelmingly in favor of transfer in this case and overcomes any deference to plaintiff's choice of forum.

### (2) Convenience of Witnesses

In deciding whether to disturb the plaintiff's choice of forum, the convenience of the witnesses is generally the most important factor in the transfer analysis. *See, e.g., DLJ Mortgage Capital, Inc. v. Cameron Fin. Group, Inc.,* No. 07 Civ. 3746 (LAP), 2007 WL 4325893, at *5 (S.D.N.Y. Dec. 4, 2007) ("[T]he convenience of witnesses is typically the most important factor in a motion pursuant to § 1404(a)."); *accord Neil Bros. Ltd v. World Wide Lines, Inc.,* 425 F. Supp. 2d 325, 329 (E.D.N.Y. 2006) ("The convenience of the witnesses is probably the single most important factor in the transfer analysis."); *Wagner,* 502 F. Supp. 2d at 315 ("[T]he convenience of both party and non-party witnesses is probably the single-most important factor in the analysis of whether transfer should be granted.") (internal quotation marks and citation omitted); *see also Viacom Int'l, Inc. v. Melvin Simon Prods., Inc.,* 774 F. Supp. 858, 868 (S.D.N.Y. 1991) ("The core determination under § 1404(a) is the center of gravity of the litigation, a key test of which is the convenience of witnesses. Courts routinely transfer cases when the principal events occurred, and the principal witnesses are located, in another district.") (citations omitted). Generally, as defendants have done in the instant case, the moving party submits an affidavit explaining why the transferee forum is more convenient, which includes "the potential principal witnesses expected to be called and the substance of their testimony." *Pall Corp. v. PTI Techs., Inc.,* 992 F. Supp. 196, 198 (E.D.N.Y. 1998) (quoting *Laumann Mfg. Corp. v. Castings USA Inc.,* 913 F. Supp. 712, 720 (E.D.N.Y. 1996)).

Here, defendants have submitted two declarations from a Vice President which explain that "[s]ubstantial aspects of GWBD's independent contractor system and compensation policies and practices, including those relating to overtime, have been formulated by individuals at Defendants' corporate headquarters in Horsham, Pennsylvania." (Taylor Decl. ¶ 7.) More specifically, according to GWB and GWBD Vice President Carl Taylor, "the Chief Executive Officer, Vice-President of Human Resources, Vice-President of Information Technology, Vice-President of Corporate Development, Vice-President National Accounts, the General Counsel and other officers have all been resident in the corporate headquarters in Horsham, Pennsylvania during the time period potentially relevant to this lawsuit." (December 3, 2008 Taylor Declaration ("Second Taylor Decl.") ¶ 6.) Thus, to the extent the lawsuit will focus on the defendants' formulation of policies and practices in connection with its independent contractor system, most (if not all) of those witnesses are at the defendants' corporate headquarters in the Eastern District of

---

transfer motion, the Court would reach the same conclusion regarding transfer for the reasons discussed *infra*.

6

Pennsylvania. *See, e.g., Earley*, 2007 WL 1624757, at *2 (transferring FLSA action to District of Massachusetts because, among other things, the following: "Plaintiff alleges a corporate policy of denying overtime pay to employees throughout the United States. Although there has not yet been any discovery on the issue, it is likely that Defendant's national overtime policies were determined at its headquarters in Massachusetts. Moreover, it is undisputed that many of the documents and executives relevant to discovery are located in Massachusetts . . . . Accordingly, this factor weighs in favor of transfer to Massachusetts.")

In response to defendants' position, plaintiffs argue that the contracts between plaintiff and defendants state that the defendants' principal place of business is in New York, and although defendants' corporate headquarters may be in Horsham, Pennsylvania, approximately 57 employees of GWB and GWBD are still located at the office in Bay Shore, New York. (Plaintiffs' Supplemental Memorandum, at 2-3.) The Court finds these arguments unpersuasive. Even though the documents listed Bay Shore as the defendants' principal place of business and a number of employees remain in Bay Shore, there is still no evidence that any of the operative facts occurred in this District and no evidence that any relevant witnesses whatsoever are in this District. With respect to the 57 employees that are currently in New York, Vice President Taylor explains:

> [B]oth GWB and GWBD have maintained their corporate headquarters, principal place of business, and Legal and Human Resources departments in Horsham, Pennsylvania, throughout the time period potentially relevant to this lawsuit (which I understand extends back no earlier than July 2005) . . . . GWBD has only 3 employees in New York, all of whom perform support functions for the company. The other GWB companies have only 54 employees remaining in Bay Shore, New York location. 43 of the employees perform support functions for the company's Information Technology department. The other 11 employees perform support functions for the GWB companies in the Purchasing, Sales, Human Resources and other similar departments.

(Second Taylor Decl. ¶ 2.)

In short, it appears that many of the relevant witnesses reside in the Eastern District of Pennsylvania. In contrast, the Court is not aware of a single, potential party or non-party witness, who resides in the Eastern District of New York. With respect to plaintiffs (and any other witnesses in Alabama), since they will be required to travel whether the action is in New York or Pennsylvania, the transfer does not place any additional burden on them. Similarly, although plaintiffs are also seeking to bring this as a "collective action" under the FLSA, which would potentially involve plaintiffs and witnesses all across the country (as plaintiffs' counsel confirmed at oral argument), that potential scenario does not militate against transfer, because this District is no more a convenient district for these individuals than the Eastern District of Pennsylvania. *See, e.g., Neil Bros. Ltd,* 425 F. Supp. 2d at 330 ("On balance, the convenience of the witnesses weighs in favor of transfer [to Tennessee]. Approximately half of the witnesses identified by the parties reside in Tennessee, while none reside in New York. If the case is transferred, [two Tennessee witnesses] will be relieved of

traveling entirely. By contrast, if the case is not transferred, the witnesses identified by the plaintiff . . . will still be required to travel . . . . Accordingly, the Court finds that this important factor favors a transfer to Tennessee.")

In sum, the "convenience of the witnesses" factor strongly favors transfer of this case to the Eastern District of Pennsylvania where a substantial number of potential witnesses for defendants reside.

### (3) Location of Documents

With respect to the location of documents, Vice President Taylor has stated that "[d]efendants' headquarters will serve as the central location for coordination of company witnesses and document production for this action" and "[d]efendants' human resources and legal departments are located at [the] corporate headquarters in Horsham, Pennsylvania." Although this factor favors transfer, the Court does not view this factor as particularly significant given the technological age in which we live, with the widespread use of, among other things, electronic document production. *See, e.g., Am. S.S. Owners Mut. Prot. and Indem. Ass'n, Inc. v. Lafarge N. Am., Inc.,* 474 F. Supp. 2d 474, 484 (S.D.N.Y. 2007) ("The location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents."); *DiStefano v. Carozzi N. Am., Inc.,* No. 98 Civ. 7137 (SJ), 2002 WL 31640476, at *4 (E.D.N.Y. Nov. 16, 2002) ("Although the location of relevant documents is entitled to some weight when determining whether a case should be transferred, modern photocopying technology deprives this issue of practical or legal weight.") (citations omitted); *see also Earley,* 2007 WL 1624757, at *3 ("While a nationwide class action invariably involves voluminous document discovery in numerous locales, the single most likely source of relevant documents is Defendant's headquarters in Massachusetts, because that is where Defendant's corporate policies are determined. This fact weighs in favor of transfer to the District of Massachusetts, albeit marginally.")

### (4) Convenience of the Parties

In terms of the convenience of the parties, the Court recognizes that "'[w]here transfer would merely shift the inconvenience from one party to the other,' the Court should leave plaintiff's choice of venue undisturbed." *See Wagner,* 502 F. Supp. 2d at 316 (quoting *Wilshire Credit Corp. v. Barrett Capital Mgmt. Corp.,* 976 F. Supp. 174, 182 (W.D.N.Y. 1997)); *accord Schieffelin & Co. v. Jack Co. of Boca, Inc.,* 725 F. Supp. 1314, 1322 (S.D.N.Y. 1989). However, "transfer of venue may be appropriate where inconvenience for the party moving for transfer could be completely eliminated without substantially adding to the non-moving party's inconvenience." *Frame*, 2007 WL 2815613, at *6.

In the instant case, transfer of the case would not shift the inconvenience to the plaintiffs; rather, transfer will result in little, if any, additional inconvenience on plaintiffs, while at the same time making the forum substantially more convenient for defendants. More specifically, the Court concludes that this factor weighs heavily in favor of transfer because, as noted *supra* in connection with the analysis of potential witnesses, defendant's headquarters is in the Eastern District of Pennsylvania and, thus, that district is clearly a substantially more convenient forum for

them.[4] In contrast, plaintiffs, who reside in Alabama, will be required to travel regardless of the transfer. In other words, this District is not convenient for plaintiffs, and a transfer will impose no additional burden on them. *See, e.g., Frame*, 2007 WL 2815613, at *6 ("Transferring this case to the Western District of Texas would obviously eliminate inconvenience for Defendant since its corporate headquarters are located within that District. As for Plaintiff, she would be only slightly more inconvenienced, if at all, by a transfer of the case to Texas since she will have to travel outside of North Carolina regardless."); *Neil Brothers Ltd.,* 425 F. Supp. 2d at 328 ("if the action remains in New York, all . . . parties will be required to travel. World Wide will be relieved of this burden if the action is transferred to Tennessee. Accordingly, this factor weighs in favor of transferring this action to the Western District of Tennessee."). Therefore, in the instant case, the "convenience of the party" factor weighs strongly in favor of transfer.

---

[4] Plaintiffs argue that defendants used to have their corporate headquarters in New York, have been a party to numerous lawsuits in New York, and continue to have dozens of employees at a New York office. (Plaintiffs' Memorandum of Law, at 5; Plaintiffs' Supplemental Memorandum of Law, at 1-2.) The fact that the headquarters was in New York in the past and that defendants have defended numerous lawsuits in New York does not mean that, where defendants have moved their headquarters and the other relevant factors favor transfer, this link to this District should preclude transfer. Similarly, the current presence of defendants' employees in New York, who are unrelated to the issues in this lawsuit, is also insufficient to override the other factors strongly supporting transfer. *See, e.g., Neil Bros. Ltd,* 425 F. Supp. 2d at 331 (sales by defendant in forum state not sufficient to override other factors favoring transfer).

### (5) Locus of Operative Facts

There is no evidence that any of the relevant events to this action occurred in this District. It is undisputed that (1) plaintiffs Farrior and Head "have never been independent contractors for GWB or GWBD in the State of New York"; (2) "Messrs. Farrior and Head own distribution rights to certain GWBD products within a territory known as a "Sales Area" within Alabama, and they have never had any rights to sell GWBD's products in the Eastern District of New York or elsewhere in New York"; and (3) "GWBD independent contractors, such as Plaintiffs, sign a series of documents and agreements when they purchase their distribution rights, including a Distribution Agreement." (Taylor Decl. ¶¶ 1-3.) Therefore, plaintiffs' conduct relating to the FLSA action, including the alleged overtime that was worked, did not occur in this District, but rather occurred in Alabama.

Moreover, there is no evidence that defendants' conduct – relating to the formulation of the Distribution Agreements and the independent contractor system and compensation policies and practices, which may be relevant to plaintiffs' claims – occurred in this District. Instead, the uncontroverted evidence is that "[m]ost of the documents [relating to distribution rights] are formulated and drafted by GWBD personnel with input from its corporate headquarters in Horsham, Pennsylvania" and, as noted previously, "[s]ubstantial aspects of GWBD's independent contractor system and compensation policies and practices, including those relating to overtime, have been formulated by individuals at Defendants' corporate headquarters in

Horsham, Pennsylvania."[5] (Taylor Decl. ¶¶ 4, 7.)

Therefore, this factor favors transfer because none of the operative facts appear to have taken place in this District, and at least some of the operative facts – relating to corporate decision-making – took place in Pennsylvania. Accordingly, comparing this forum and the Eastern District of New York, the location of the operative facts favors transfer.

---

[5] Plaintiffs argue that the reference to the New York office in documents executed by plaintiffs in 2006 is an indication that some operative facts related to this case were in New York. Defendants have submitted a declaration from Vice President Taylor that states, "Since at least 2004, Defendants have maintained their corporate headquarters and principal places of business in Horsham, Pennsylvania. To the extent that any agreements executed by Messrs. Farrior and Head mistakenly state that GWBD maintains a 'principal office' at an address in New York, those statements are merely errors and remnants of predecessor agreements from before 2004." (Taylor Decl. ¶ 6.) The Court finds plaintiffs' attempt to rely on this reference in the documents (and their other speculative statements regarding a possible connection to New York) unavailing. This passing reference in the documents to a New York principal place of business is grossly insufficient, in light of the complete absence of any other allegations linking the operative events to New York, to link the locus of operative facts to New York, especially where (as defendants have demonstrated) it is undisputed that (1) all of plaintiffs' work (including the alleged overtime) took place outside New York, and (2) even if plaintiffs' unsupported contention were true (and the defendants' headquarters were located in New York in February 2006), the defendants' headquarters still would have been in Pennsylvania for the entire two-year limitation period that is applicable under the FLSA to this case.

(6) Availability of Process to Compel the Attendance of Unwilling Witnesses

Rules 45(b)(2) and 45(c)(3)(A)(ii) of the Federal Rules of Civil Procedure prohibit a subpoena from directing a witness to travel more than 100 miles. Fed. R. Civ. P. 45. There is no indication that any non-party witnesses would refuse to appear and, thus, this factor is neutral.

(7) Relative Means of the Parties

"Where a disparity exists between the means of the parties, such as in the case of an individual suing a large corporation, the court may consider the relative means of the parties in determining where a case should proceed." *800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 135 (S.D.N.Y. 1994); *see also Dwyer v. General Motors Corp.*, 853 F. Supp. 690, 693-94 (S.D.N.Y. 1994) (denying transfer where "[p]laintiffs are individuals who are suing a large corporation which possesses considerably greater financial assets").

Because plaintiffs do not reside here, there is no apparent hardship to them from such transfer. Moreover, plaintiffs have been unable to identify a substantial hardship (financial or otherwise) that would be caused by the transfer.[6] *See, e.g., Frame*, 2007 WL

---

[6] In terms of other factors, with respect to the forum's familiarity with governing law, the Court views this factor as neutral in this case because the Court assumes that both district courts are equally familiar with, and capable of applying, the legal principles necessary to adjudicate plaintiff's case. *See Wagner*, 502 F. Supp. 2d at 317. Defendants argue that this factor favors the Eastern District of Pennsylvania because "since at least 2004, the

2815613, at *6 ("Plaintiff has demonstrated through her choice of New York as the forum for this action that financial considerations related to litigating in a distant court are not prohibitive.").

In sum, the deference to plaintiffs' choice of forum is significantly diminished in this case because plaintiffs do not reside in this District and this District has little or no connection to the operative facts in this case. Moreover, any deference to plaintiffs' choice of forum is substantially outweighed by the other factors favoring transfer – including the fact that many of the defendants' witnesses are in the Eastern District of Pennsylvania and no witnesses are in this District. Thus, given all of the factors as applied to this case, transfer is appropriate and defendants have met their burden under Section 1404(a). *See, e.g., id.* at *7 ("Having weighed all of the factors discussed above, the Court finds that Defendant has sustained its burden of demonstrating that the balance of convenience favors its request to have transferred to the Western District of Texas. In particular, the convenience of the potential material witnesses and the convenience of the Parties counsels in favor of transferring this matter to a forum that has a closer connection to the locus of operative facts than does New York, which is neither Plaintiff's state of residence nor especially convenient for either Party.")

This Court's conclusion is consistent with a number of other courts who have concluded in FLSA cases, with potential certification as a collective and/or class action, that transfer to another district was appropriate where the current plaintiffs and/or operative facts had little connection to the transferor district. *See, e.g., Earley,* 2007 WL 1624757, *3-*4 (transferring FLSA lawsuit to District of Massachusetts, which was the location of defendant's corporate headquarters); *Freeman,* 2007 WL 895282, at *4 (transferring FLSA lawsuit to District of New Jersey where plaintiffs did not reside in New York, operative

---

Distribution Agreements and related agreements executed by Plaintiffs and other independent contractors of GWBD have provided that Pennsylvania law applies." (Defendants' Memorandum of Law, at 8). The Court recognizes, as the Supreme Court has noted, that "there is an appropriateness . . . in having the trial of a diversity case in a forum that is at home with the state law that must govern the case." *Ferens v. John Deere Co.*, 494 U.S. 516, 530 (1990) (quoting *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 509 (1947), *superceded by statute on other grounds*). However, the instant case is not a diversity case; rather, it is brought under federal question jurisdiction pursuant to the FLSA. Thus, given the application of federal law, the choice of law provision in the agreements is not a significant factor, even assuming *arguendo* sub-issues involving state law could arise in the context of this case. *See, e.g., Earley*, 2007 WL 1624757, at*3 ("any district would be presumed to have expertise in adjudicating Plaintiff's FLSA claims"); *Neil Brothers Ltd.*, 425 F. Supp. 2d at 333 ("Where, as here, the law to be applied is federal patent law, the factor is neutral."); *Wechsler v. Macke Int'l Trade, Inc.*, No. 99 Civ. 5725 (AGS), 1999 WL 1261251, at *9 (S.D.N.Y. Dec. 27, 1999) ("Patent law is federal law and any district court may handle a patent case with equal skill.") (quotations and citations omitted). Similarly, with respect to the relative docket conditions of the two districts, the Court does not view relative docket congestion as a factor in this case because this Court is fully capable of adjudicating plaintiffs' claims in a timely manner and there is no indication that the situation in the Eastern District of Pennsylvania will be any different. Finally, the Court does not find any basis to conclude that "the interests of justice," which is a separate component of the Section 1404(a) analysis, in any way militate against transfer, but rather believe such interests support transfer under the totality of the circumstances for the reasons previously discussed.

facts and events did not occur in New York, and "the center of gravity" of the litigation was New Jersey) (quotations and citation omitted); *Montgomery,* 2007 WL 576128, at *5 (transferring FLSA lawsuit to Western District of Missouri where, among other things, "plaintiffs have chosen a foreign forum, and the lawsuit bears little relation to New York").

Accordingly, after carefully considering the parties' submissions and the applicable law, the Court concludes in its discretion that the defendant has met its burden and demonstrated that the above-referenced factors, as well as the totality of the circumstances and the interests of justice, warrant transfer of this action to the Eastern District of Pennsylvania.

III. CONCLUSION

For the reasons set forth above, defendants' motion to transfer is GRANTED. The Clerk of this Court shall TRANSFER this case to the United States District Court for the Eastern District of Pennsylvania, pursuant to 28 U.S.C. § 1404(a).

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: January 15, 2009
      Central Islip, NY

\* \* \*

The attorneys for the plaintiffs are Joe R. Whatley, Jr., of Whatley Drake & Kallas, LLC 1540 Broadway, 37th Floor, New York, New York 10036; Amy A. Weaver of Whatley Drake & Kallas, LLC, 2001 Park Place North, Suite 1000, Birmingham, Alabama 35203; Greg L. Davis, The Law Offices of Greg L. Davis, 6987 Halcyon Park Drive, Montgomery, Alabama 36117; E. Kirk Wood, Wood Law Firm, LLC, 2900 1st Avenue South, Suite A, Birmingham, Alabama 35233.

The attorney for the defendants is Michael J. Puma, of Morgan Lewis & Bockus, LLP, 1701 Market Street, Philadelphia, Pennsylvania 19103.